RENE L. VALLADARES
Federal Public Defender
State Bar No. 11479
William Carrico
Assistant Federal Public Defender
State Bar No. 003042
411 E. Bonneville, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577
(Fax) 388-6261

Attorney for Richard William Ward

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RICHARD WILLIAM WARD,<br><br>Defendant. | 2:14-cr-306-LDG-NJK<br><br>**MOTION TO RECONSIDER THE CONDITION OF HALF-WAY HOUSE RESIDENCE** |

Richard William Ward (hereinafter, "Mr. Ward"), through his attorney, William Carrico of the Federal Public Defender's Office, moves this Honorable Court to reconsider its order imposing a condition on Mr. Ward for halfway house residence pending the outcome of his case. Mr. Ward's trial is currently set for January 26, 2015. This motion is brought pursuant to Title 18 United States Code, §3142 and is supported by the attached Memorandum of Points and Authorities.

DATED this 18th day of November 2014.

                                        RENE L. VALLADARES
                                        Federal Public Defender

                                        */s/ William C. Carrico*
By:   _____
       WILLIAM C. CARRICO,
       Assistant Federal Public Defender

MEMORANDUM OF POINTS AND AUTHORITIES

I.

Procedural Background.

Mr. Ward is currently charged with one count of Possession of an Unregistered Firearm, in violation of 26 U.S.C. §§ 5841, 5961(d) and 5871. (CR # 25). At the detention hearing held on July 14, 2014, Mr. Ward was ordered released pending trial with the condition that he maintain residence in the Federal Halfway House. (CR # 12) On August 26, 2014, the court (Hoffman, MJ.) modified Mr. Ward's conditions to allow him to live in an apartment located on Karen Ave., in Las Vegas, NV. (CR # 21) Since that time, Mr. Ward has maintained a stable job, spent time with his children, and paid his bills and rent as a responsible adult. Mr. Ward also began dating a girl, Michean Heffron (hereinafter "Ms. Heffron") who is employed at the Clark County Constable's office.

Unfortunately, on two occasions, Mr. Ward tested positive for methamphetamine, once on September 3, 2014 and once on October 3, 2014. (*See* CR # 34) Notably, the dates are one month apart, which indicates that, in the interim, Mr. Ward was in fact sober. After the October 3, positive test, undersigned counsel had a long conversation with Mr. Ward, wherein Mr. Ward indicated that he would hereinafter remain clean. True to his word, Mr. Ward repeatedly tested clean throughout the month of October and in November through his revocation hearing on November 12, 2014. At the revocation hearing, this Honorable Court again modified Mr. Ward's conditions so as to require that he once again maintain residence at the halfway house. (CR #47)

At the hearing[1], the government represented that Mr. Ward is a long time drug user who had used after being ordered not to, and that this, in and of itself, made it necessary to detain Mr. Ward. The government characterized Mr. Ward as unable to follow the conditions of pretrial detention, which, in the government's opinion made him likely to re-offend. Additionally the government alleged that Mr. Ward, prior to his initial arrest, was manufacturing silencers, and that the only purpose behind such behavior must be inherently dangerous and criminal. This Court seemed particularly bothered by the fact that almost immediately upon Mr. Ward's release from the halfway

---

[1] At the time of this writing, Defense Counsel has not obtained the audio recording of the hearing, thus the summary is being provided from memory.

1  house, Mr. Ward used narcotics. This Court seemed even more bothered by the fact that Mr. Ward
2  used again, after being warned by pretrial services that another dirty test would be reported to the
3  Court.
4      As the Bail Reform Act requires that this Court order the pretrial release of a defendant with
5  *the least restrictive* set of conditions that will reasonably assure the defendant's appearance in court
6  and protect the safety of the community, Mr. Ward respectfully requests this Court reconsider its
7  November 12, 2014 order, and release Mr. Ward from the halfway house with modified restrictive
8  conditions.

## II.

### Argument.

10      The Bail Reform Act requires that a reviewing court, such as this one, release a defendant,
11  such as Mr. Ward, "subject to the *least restrictive* further condition... that will reasonably assure the
12  appearance of the person as required and the safety of any other person and the community." 18
13  U.S.C. § 3142(c). Undeniably, a violation of pretrial release conditions changes the equation
14  somewhat. *See* 18 U.S.C. § 3148 (b). To sanction an individual for a violation of pretrial release the
15  court must find two things: 1) either there is probable cause to believe that the individual broke the
16  law, or that a condition was violated, by clear and convincing evidence; *and* 2) either that no
17  condition or combination of conditions will assure the safety of the community and the defendant's
18  appearance, or the person is unlikely to abide by the conditions set forth by the court. *Id.* However,
19  if the court finds that there are conditions that will assure the community's safety and the defendant's
20  appearance, and that the defendant is likely to abide by such conditions, then 18 U.S.C. § 3142
21  applies, and the defendant should be placed on the least restrictive conditions. *Id.*
22      Admittedly, Mr. Ward violated the conditions of his pretrial release, thus there is no dispute
23  as to whether factor one was met. As to whether there are conditions that Mr. Ward would abide by
24  to reasonablely assure the community's safety and Mr. Ward's appearance, the Court concluded that
25  residence in the halfway house was necessary, and thus ordered the same. However, Mr. Ward
26  respectfully contends that increased drug testing, GPS monitoring, home detention, and the
27  supervision of a third party custodian are less restrictive conditions with which Mr. Ward is likely
28  ///

to comply and will reasonably protect the safety of the community and assure his appearance in court.

Mr. Ward's pretrial violations are not so severe so as to warrant what is arguably the most restrictive condition that the court may impose pending trial, short of incarceration. Contrary to the government's allegations, Mr. Ward is not a dangerous criminal that poses an extreme threat to society. Mr. Ward is a gunsmith in training. Mr. Ward was enrolled in classes which would result in a license to manufacture firearms upon completion. While it is true, that his methods of practicing and learning his trade were perhaps inappropriate, Mr. Ward maintains that the items in his hoem were not silencers and that his intentions were not criminal.

Additionally, the severity of Mr. Ward's violations, must be measured against the underlying purposes for such conditions. While it is true that Mr. Ward did have two dirty Urine Analyses (hereinafter "UAs"), he also had numerous other clean UAs. The government contends that Mr. Ward is a long time drug user. If this is true, some relapse is to be expected while Mr. Ward is attempting to recover. Although his UAs have not been perfect, his repeated clean testing shows that he has been making a good faith effort to comply. It is true that Mr. Ward initially denied his use to pretrial services, but he did this because he felt embarrassed and disappointed with himself. He was ashamed of the fact that, regardless of the consequences, he had given in to temptation, and used.

Admittedly, he made the same mistake twice which resulted in a second dirty UA. This time he immediately recognized that he had messed up, and called undersigned counsel. After a long conversation regarding his use and the consequences, Mr. Ward called pretrial services, admitted his mistake, and vowed that he would not make the same mistake again. The pretrial services report reflects that, in fact, he did not make that same mistake again. Mr. Ward is undeniably in need of counseling, which the halfway house does not provide. Mr. Ward is currently trying to set up such counseling with his pretrial services officer, although he has been unsuccessful thus far.

The relationship of these two slips is rather attenuated from the goals of pretrial detention. As for protecting the safety of the community, it may be true that drug use, in the conglomerate, impacts society negatively, through increased drug related crime and encouraging drug dealing in a supply-demand type manner. However, this one man's individual uses, occurring one month apart,

4

does not pose the danger to society that the Bail Reform Act sought to prevent. Mr. Ward's past criminal convictions indicate that he has never been in trouble for a major crime, and all of his prior arrests relate to simple drug use. Mr. Ward is not an individual whose drug use leads him to commit serious crimes, as shown by the past 31 years being free from arrest for serious crimes.

'Although the [bail reform] statute permits the court to consider the nature of the offense and the evidence of guilt, the statute neither requires nor permits a pretrial determination that the person is guilty." *United States v. Motamedi,* 767 F.2d 1403, 1408 (9th Cir. 1985) (citations omitted). "[I]f the court impermissibly makes a preliminary determination of guilt, the refusal to grant release could become in substance a matter of punishment." *Id.* Although the facts of the case, as proffered by the government, may seem quite shocking, Mr. Ward is charged with one count of violating the firearm registration requirements. 26 U.S.C. §§ 5841, 5961(d) and 5871. This is an offense that is contained in the Internal Revenue Code. *Id.* Certainly, a violation of the Internal Revenue Code does not indicate the type of danger from which one would expect society to need protection. Moreover, at this stage in the proceedings, Mr. Ward is presumed innocent. Thus, while the Court must consider the nature of the charges, the Court must also acknowledge that the weight of the evidence against Mr. Ward is the least important of the factors the court should consider. 18 U.S.C. § 3142(g); *Motamedi,* 767 F.2d at 1408 (9th Cir. 1985).

Further, Mr. Ward's minor drug use has not led to evidence that he is a flight risk. Pretrial services informed Mr. Ward that they intended to file a violation report with the court long before the petition was actually filed. This knowledge did not cause him to flee. He continued to report to pretrial services as required and attend all of the necessary court appearances. Mr. Ward's continued commitment to maintaining compliance in all other aspects of his pretrial release conditions is clear evidence that his two violations are not indicative of an inability to comply. Further, the most clear evidence of his commitment to comply with the Court's orders comes from this Court's order that he turn himself into the halfway house. Mr. Ward turned himself in to the halfway house as required, which relinquished virtually all of his freedom. Certainly, no condition is more difficult to comply with, than turning one's self into a locked down facility.

///

The only other violation alleged in the petition, is barely worth noting. Mr. Ward is accused of violating a no contact order with Amber Martinez (hereinafter "Ms. Martinez"). This alleged violation is the result of a one way communication, via letter, from Ms. Martinez, a cooperating government witness, who has been working with members of the ATF for some period of time, to Mr. Ward. Mr. Ward did not reciprocate the communication. However, the government and pretrial services have made much of this alleged one-way communication without informing the court that she is working for the government. This Court should not consider the government witness' one way communication as a reason to order Mr. Ward to a halfway house.

When Mr. Ward was released from the halfway house, no additional conditions were imposed; Mr. Ward was free to come and go as he pleased. While it is true that these restrictions proved to be inadequate to ensure Mr. Ward would not use drugs, that does not, in turn, mean that no conditions short of the halfway house will prevent Mr. Ward from using. Ms. Heffron is a respectable member of the community who is willing to be a third party custodian for Mr. Ward. She works for the Clark County Constable's office and knows that if does not take her responsibilities seriously it could have a drastic negative impact on her job. She has no criminal history, and has been in Las Vegas 12 years. She is willing to report any violations of Mr. Ward's conditions to the Court.

Additionally, this Court could place Mr. Ward on home detention, which allows him to leave his home only for approved activities. Mr. Ward's home detention can be electronically monitored, thus preventing him from leaving the house and stumbling upon temptation. Additionally, increased drug testing would serve as both a further deterrent and keep pretrial services more informed of any future non-compliance. Mr. Ward will comply with the aforementioned conditions, as he has complied with the vast majority of other conditions imposed by this Court. Moreover, these conditions will reasonably assure that Mr. Ward will not use drugs again, that the community will be protected, and that Mr. Ward will appear in Court. Thus, Mr. Ward respectfully requests this Court reconsider its November 12, 2014 order and release him with the aforementioned conditions.

///

///

## CONCLUSION

Mr. Ward is not a danger to society, nor is he a flight risk. His admitted violations do not warrant such a restrictive condition as residence in a halfway house. Electronic monitoring, home detention, increased drug testing, and a third party custodian, are a less restrictive combination of conditions which this Court should impose consistent with the Bail Reform Act. Thus Mr. Ward respectfully requests this Court reconsider its November 12, 2014 ruling, and order Mr. Ward released with the aforementioned conditions.

DATED this 18th day of November, 2014.

Respectfully Submitted,

RENE L. VALLADARES
Federal Public Defender

By: */s/ William C. Carrico*
WILLIAM C. CARRICO,
Assistant Federal Public Defender

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee of the Federal Public Defender for the District of Nevada and is a person of such age and discretion as to be competent to serve papers.

That on November 18, 2014, she served a copy of the above and foregoing **MOTION TO RECONSIDER THE CONDITION OF HALF-WAY HOUSE RESIDENCE** via FPD runner to the person named below:

DANIEL G. BOGDEN
United States Attorney
PHILLIP N. SMITH
Assistant United States Attorney
ALEXANDRA M. MICHAEL
Assistant United States Attorney
333 Las Vegas Blvd. So. 5th Floor
Las Vegas, NV 89101

*/s/ Karen Meyer*
_____
Employee of the Federal Public Defender