1  RENE L. VALLADARES
   Federal Public Defender
2  Nevada State Bar # 11479
   WILLIAM CARRICO
3  Assistant Federal Public Defender
   Nevada State Bar # 003042
4  411 E. Bonneville Avenue, Ste. 250
   Las Vegas, Nevada 89101
5  (702) 388-6577/Phone
   (702) 388-6261/Fax
6

7  Attorney for Richard William Ward

8                      UNITED STATES DISTRICT COURT

9                          DISTRICT OF NEVADA

10                                * * *

11  UNITED STATES OF AMERICA,              2:14-cr-306-LDG-NJK

12                   Plaintiff,            **MOTION TO COMPEL DISCOVERY**

13  vs.

14

15  RICHARD WILLIAM WARD,

16                   Defendant.

17          Certification: This Motion is being timely filed.

18          Richard Ward, the Defendant named above, through his attorney, William Carrico of the

19  Office of the Federal Public Defender, reluctantly submits the following Motion in order to obtain

20  information that is material to the defense of this case.  This Motion is brought under the Federal

21  Rules of Criminal Procedure, Rule 16, the standing Order of Pretrial Procedure on file and the

22  following Memorandum of Points and Authorities.

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28

After the granting of this Motion, the Defense asks that this Court itself conduct the necessary *in camera* review of the sensitive personnel records and internal affairs investigation.

DATED this 30th day of January, 2015.

RENE L. VALLADARES
Federal Public Defender

*/s/ William Carrico*

_____
WILLIAM CARRICO
Assistant Federal Public Defender
Counsel for Richard Ward

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## Procedural History

At approximately 3:30 pm on January 22, 2015, Detective Michael Kitchen concluded his testimony in the matter of the Defendant's Motion to Suppress Evidence.  A mere two hours or so later, Detective Kitchen himself was being taken into custody on charges of robbery, sexual assault and battery with substantial bodily harm.  The Defendant asserts that he has the right to request the following relevant material as a result of this development: (1) the preservation of any cellular telephone records, together with phones for any and all cellular telephones issued to, or used by, Detective Kitchen on January 22, 2015; (2) an examination by the Court *in camera* of Detective Kitchen's personnel file pursuant to *United States v. Henthorn,* 931 F.2d 29 (9th Cir. 1991); (3) an examination by the Court *in camera* of any police file dealing with an investigation by Internal Affairs into the conduct of Detective Kitchen; and (4) the arrest report pertaining to the arrest of Detective Kitchen on January 22, 2015.

The standing order on Pretrial Procedure in this case would seem to require that before bringing this matter to the Court, it should first be addressed to opposing counsel at the United States Attorney's Office.  Requests for the material were therefore sent out over a period between Friday, January 23 to Monday, January 27.  The substance of the response was first that a *Henthorn* request was made and there was no information to produce.  As for the preservation to telephone records, an examination of the Internal Affairs file and the Detective's arrest report, it was the government's opinion that those would more properly be the made the subject of a motion to compel.[1]  As it is certain that Detective Kitchen's testimony may be required in this case at a later date, and likely that the material requested would be helpful to the issue placed before this Court by the Motion to Suppress, the Defendant reluctantly accepts the government's invitation and files this Motion.

---

[1]*As this is being written, the undersigned has been told that a copy of the Detective's arrest report may be en route to be delivered within the next few hours.  If correct, then that portion of this request would be deemed moot.*

II.

Discovery Obligations

A. Controlling Law.

The Fifth, Sixth, and Fourteenth Amendments of the United States Constitution require the government to disclose evidence to the accused that is favorable as to his guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87; 83 S.Ct. 1194; 10 L. Ed.2d 215; 1963 U.S. LEXIS 1615; (1963). "Evidence favorable to the defendant" includes evidence that could be used to impeach a government witness. *Giglio v. United States,* 405 U.S. 150, 154; 92 S. Ct. 763; 31 L. Ed. 2d 104; 1972 U.S. LEXIS 83 (Sup. Ct. 1972). *See also: Bagley v. United States*, 473 U.S. 667, 676-77, 105 S.Ct. 3375 (1985) (both impeachment evidence and exculpatory evidence are subject to Brady disclosure).

On appeal, a *Brady* or *Giglio* violation is said to occur if the following three elements are present. First, if the evidence at issue was favorable to the accused- either because it was exculpatory, or because it was impeaching. Next, was the evidence sought suppressed by the State- either willfully or inadvertently. Finally a Court of Appeal would look at whether the suppression of that evidence resulted in prejudice to the accused. *United States v. Kohring*, 637 F.3d 895, 901-902 (9th Cir. 2011). Whether at the time of trial of this case, or attacking Detective Kitchen's credibility for purposes of suppression, the stakes for the Defendant are equally high. In this case, the affiant's prior testimony included the revelation, for the first time, that most of his statement of probable cause was, he alleged, taken from information given him by others. Even then, those statements appeared to contrast with the testimony of the only other government witness, as well as (but to a much greater degree), with the testimony of the two defense witnesses, as well as evidence corroborating those witnesses' testimony.

The government has declined to provide the requested information except to respond, in regards to the *Henthorn* request, that "a request was made" and "there was no information to produce". That response misses the mark, in that the duty to examine for a *Henthorn* request rests with the Assistant United States Attorney and/or this Court. *Id.* As to the other material, the response was to invite the Defendant to file a motion.

/ / /

4

B. Duty to Disclose.

Does the prosecutor have a duty to "turn over to the defense in discovery all material information casting a shadow on a government witness's credibility"? If the answer to that was not otherwise obvious, the Courts have consistently answered that question in the affirmative. *See: United States v. Bernal-Obeso*, 989 F.2d 331, 334 (9th Cir. 1993) (citing *Giglio v. United States, supra.*). The role of the prosecutor has been characterized as a "representative of a sovereignty" who seeks justice, not a win-at-all-costs opponent. *Kyles v. Whitley*, 514 U.S. 419, 439; 115 S. Ct. 1555 (1995) (quoting *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629 (1935)). The duty extends to material not within the knowledge of the particular prosecutor who handled the case, so long as the prosecutor's office had access to the material. *Kyles*, 514 U.S. at 437.

Although not often cited, the prosecutor has a duty to disclose material *evidence even in the absence of a specific discovery request* by the defense. *Bagley v. United States*, *supra.* at 682 (emphasis added). The failure of the government to respond to a specific, relevant request, however, is particularly egregious, and "seldom, if ever, excusable." *United States v. Agurs,* 427 U.S. 97, 106; 96 S.Ct. 2392; 49 L. Ed. 2d 324; 1976 U.S. LEXIS 72 (1976). Ultimately, if the defendant requests the personnel files of a testifying police officer, the prosecutor has a well-established obligation to review the files and turn over any material information favorable to the defense. *United States v. Henthorn*, 931 F.2d 29, 30-31 (9th Cir. 1991).

III.

What is Sought is Discoverable

A. Regarding Testimony.

When the Defense requested information regarding Detective Kitchen's personnel file, the prosecutor responded that a request had been made and there was nothing in the file. Setting aside for the moment, that the response lacks detail as to what person or agency conducted the review, in order for that response to be accurate, the file would need to be bereft of "Brady material" and any indicia that would go to the Detective's truth or veracity. It seems highly unlikely that this officer, who had worked the tourist corridor, gangs and vice would have seemingly snapped as he did within the time he left the witness stand and the time of his arrest.

1    Detective Kitchen left the stand shortly before 3:30 PM.  By all accounts, he left for a
2    prearranged meeting, arranged he is reported to have said, after a search of the "Backpage" website.
3    The meeting was to be with the victim at her apartment on the western side of town.  The man that
4    the victim referred to as her "pimp" had verified the telephone appointment for her services and
5    called her.  Detective Kitchen changed his clothes.  He drove to the location of the meeting and
6    waited while the victim received her instructions from her pimp and walked out to bring Detective
7    Kitchen up to her apartment.

8    In the apartment, a dispute arose over the amount of money paid and what that money was
9    to buy in the way of services from the victim.  Detective Kitchen is accused of striking the woman,
10   knocking her down, assaulting her, ripping her clothes off and breaking her wrist.  After retrieving
11   the money from her bra, it is alleged that the Detective ran out to his vehicle and drove away.

12   By the time of the Detective's arrest on charges- a mere two or so hours later, responding
13   officers were able to interview witnesses, trace the number of the department issued cellular phone,
14   confirm that the identity provided the victim was one also issued to the Detective by the department,
15   and arrive at the Detective's home.  Once there, Detective Kitchen was interviewed and answered
16   questions.  It was discovered that at some point, he had changed his license plate to another one- this
17   plate too, issued by the department.  He did not willingly acknowledge his actions, which at this
18   point they are just accusations, but he did submit to questioning.

19   The rapid sequence of events described above gives rise to a good faith belief that Detective
20   Kitchen may have made his plans to see the victim in advance of his testimony.  What is more, the
21   Detective testified that he had been on the force for over 15 years.  The conduct described appears
22   to be so at odds with the way in which the Detective sought to portray himself under oath, and with
23   the conduct one would expect from the average officer, that it begs the question of whether there are
24   some prior instances of conduct reflected in his police files.  At any rate, given the obvious
25   impeachment value of such information, the duty to ask for a proper examination of the material and
26   for its disclose if appropriate, should have been clear.

27   / / /

28   / / /

B. Material to the Defense.

The undisclosed evidence is likely material if it "bears on the credibility of a significant witness in the case." *United States v. Strifler*, 851 F.2d 1197, 1201 (9th Cir. 1988), *cert. denied*, 489 U.S. 1032, 109 S.Ct. 1170 (1989). Accord *Silva v. Brown*, 416 F.3d 980, 987 (9th Cir. 2005); *United States v. Price*, 566 F.3d 900, 914 (9th Cir. 2009); *United States v. Brumel-Alvarez*, 991 F.2d 1452 (9th Cir. 1993). "In cases in which the witness is central to the prosecution's case, … suppressed impeachment evidence … takes on an even greater importance." *Benn v. Lambert*, 283 F.3d 1040, 1054 (9th Cir. 2002). Further, the *Benn* court rejected the argument that, because the defense tried to impeach a witness and failed, any additional evidence would not have been material. *Id.* at 1056. ("The fact that other impeachment evidence was introduced by the defense does not affect our conclusion."); accord *United States v. Service Deli, Inc.*, 151 F.3d 938, 944 (1998). Indeed, impeachment may have failed precisely because the State withheld the most damaging evidence. *Id.*

In *Kohring, supra,*. the Ninth Circuit Court of Appeals examined a Brady/Giglio claim based on the government's failure to disclose impeachment evidence consisting of a hodge-podge of police reports, handwritten notes, memoranda, and emails, as well as files regarding an ongoing sexual misconduct investigation of a main witness. *Kohring, supra.* at 895. The court reached three key conclusions relevant to this case. First, it found the impeaching evidence admissible under Fed. R. Evid. 608(b). Second, it concluded that this evidence could not be excluded as unduly prejudicial under Fed. R. Evid. 403. *Id.*, at 903-04. Third, the Court also affirmed the proposition that exculpatory information must be disclosed under Brady if it is "admissible, [will] lead to information that will be admissible, or [is] capable of being used for impeachment." *Id.,*. at 907.

Here, Detective Kitchen was the lead detective on the case. It was he that swore to the accuracy of statements that he inferred were the product of his personal knowledge. During the suppression hearing, the Defense challenged the Detective's credibility, pointing out that his version of the facts were flatly contradicted by his own affidavit, the statements of other witnesses and the contemporaneous recordings of the dispatcher.

/ / /

1

**CONCLUSION**

2       In consideration of the foregoing points, authorities and argument, it is respectfully requested

3  that this Honorable Court grant the Defendant's Motion for additional discovery as outlined above.

4  Furthermore, it is asked that the Court itself conduct an *in camera* review of the protected files once

5  produced.

6       DATED this 30th day of January, 2015.

7                            Respectfully submitted,

8                            RENE L. VALLADARES
                              Federal Public Defender

9

10                           */s/ William Carrico*

                            _____

11                            WILLIAM CARRICO
                            Assistant Federal Public Defender
                            Counsel for Richard Ward

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>CERTIFICATE OF ELECTRONIC SERVICE</u>**

2         The undersigned hereby certifies that she is an employee of the Federal Public Defender for

3  the District of Nevada and is a person of such age and discretion as to be competent to serve papers.

4         That on January 30, 2015, she served an electronic copy of the above and foregoing

5  **MOTION TO COMPEL DISCOVERY** by electronic service (ECF) to the person named below:

6

7         DANIEL G. BOGDEN
          United States Attorney
          PHILLIP N. SMITH

8         Assistant United States Attorney
          ALEXANDRA M. MICHAEL

9         Assistant United States Attorney
          333 Las Vegas Blvd. So. 5th Floor

10        Las Vegas, NV 89101

11

12                              */s/ Karen Meyer*
                                Employee of the Federal Public Defender

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28